After a line of argument — corresponding so nearly with that of DENIO, J., as to render its repetition unnecessary — to show that the act regards the systems of joint stock and mutual insurance as distinct and inconsistent; that it provides only for these two; requires each company to declare in its charter which of the two it will adopt; and that having made its election of either, it derives no power under the act to insure upon the other plan, and is forbidden by the general laws from exercising powers not so derived, the learned judge proceeded: *Page 80 
It is a fair inference, and should be assumed, that this policy was issued under the provision last referred to, of the 8th section of the charter, as there is no color or semblance of authority for it elsewhere, either in the charter or the act.
The true construction of this provision, authorizing persons so electing to insure upon paying a cash premium in full for the insurance, and in lieu of a premium note, unquestionably is, that such insurances might be made upon a different consideration than is required of persons giving a premium note. The language is, that they "may pay a definite sum, to be fixed by saidcorporation." It was beyond all doubt intended to allow the company to issue policies for cash premiums paid at the time at the same per cent upon the amount insured as stock companies usually adopt. If the charter in this respect can be sustained, there is clearly nothing to hinder a company thus organized, immediately upon commencing business, to depart from the plan of mutual insurance, and to transact all its business on the principle of a joint stock company, without a dollar of cash capital paid in, and in palpable evasion of the express requirements of the act, as the course adopted and pursued by the defendant fully illustrates.
The circumstance that it has in fact transacted some of its business on the mutual plan, does not weaken this view in the least. It is a mere question of power; and if the defendant could depart from that principle in any portion of its business, no good reason can be conceived why it could not abandon it altogether, and issue all its policies of insurance for such cash premiums as the corporation should direct, in full for the risks, and without any premium note or other obligation or liability on the part of the persons insured for the payment of losses or expenses, and thus become practically a joint stock corporation, or rather a company organized under the act, prosecuting business in manner and form as a joint stock company, without any stock paid in or invested, as expressly required by the act.
If any argument can be drawn from the history of the legislation on the subject of insurance, bearing on the question under consideration, instead of being in support of the validity *Page 81 
of the policy in question, is against it. That legislation has been varied and fluctuating, evincing an unsettled state of the public mind on the subject. Mutual insurance corporations have been the invention of the present century. When first introduced they were purely mutual. When chartered to transact business simply on that plan, it was never supposed they possessed any corporate power to make insurance on the joint stock principle. The two plans are so diametrically opposite in their structures, and so incompatible in their operations, that it would be regarded by any intelligent court an unwarrantable assumption of power not given in a mutual insurance charter. At a later period, mutual companies were chartered with power to issue policies for cash premiums paid in full for the risks; and later still, companies in existence and in operation upon the mutual principle only, have procured amendments of their charters by which such power has been added. This shows that in the opinion of the Legislature the power did not exist in the absence of the legislative grant.
The Constitution of 1846 (art. 8, § 1), allowed corporations to be formed under general laws, and declared that they should not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the object of the corporation could not be attained under general laws.
The first general law on the subject of insurance corporations passed after the adoption of the Constitution, was the act of April 10th, 1849. That law, as has been shown, contemplated the formation of insurance corporations of only the two descriptions mentioned, in respect to the plan of operations, and to be at the election of the corporators which plan to adopt. This act is the organic law of all corporations organized under it, which can no more transcend the powers intended to be conferred by it upon them than Congress can assume and exercise powers not delegated by the Constitution of the United States. If a company should be organized with a charter allowing the exercise of its corporate powers, by transacting insurance business on both of the plans mentioned, indiscriminately, *Page 82 
it would constitute a third class, for which the act makes no provision. It is reasonable, therefore, to suppose that the framers of the Constitution intended, by the provision referred to in that instrument, among other things, to check the fluctuations of legislation on the subject of insurance, as well as other corporations not municipal, and to bring about, by means of general laws, a greater uniformity in their features and principles of operation.
The conclusion to which I have arrived, after much reflection and a careful consideration of all the provisions of the act under which the defendant was organized, is, that the provision of its charter allowing persons to insure for cash premiums, paid in full for the risks and in lieu of the premium note, was inconsistent with its declared mode and manner in which the corporate powers given under and by virtue of the act were to be exercised. That having, in pursuance of the 10th section of the act, declared in its charter such mode and manner to be that of mutual insurance, and having been organized as a mutual insurance company, the corporation possessed no power to transact insurance business on any other plan. That the policy of insurance upon which the action was brought was not a mutual insurance policy, and the contract contained in it was therefore unauthorized and void, as being out of and beyond the corporate power of the defendant to make.
COMSTOCK, Ch. J., was for reversal on the ground first discussed in the opinion of SELDEN, J. DAVIES, CLERKE, BACON and WRIGHT, were understood to concur fully in Judge SELDEN'S opinion.
Judgment reversed, and new trial ordered.